UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF GEORGIA
ROME DIVISION

STEPHEN JARRARD, Plaintiff,     )
     vs.     )     CIVIL ACTION FILE NO.
     )
SHERIFF JOHNNY MOATS, *et al.*,     )     4:20-cv-00002-MLB
     Defendants.     )

## PRETRIAL ORDER

COME NOW the remaining Parties in this civil action and, pursuant to Fed. R. Civ. P. 26(a)(3) and Local Rule 16.4, file their Consolidated Pretrial Order as follows:

**The parties are in discussions concerning waiver of a jury trial, and Plaintiff has offered to waive a jury trial and proceed with a bench trial. Should Defendants agree as to a bench trial, the Parties request the opportunity to submit an Amended Pretrial Order.**

1.

There are no motions or other matters pending for consideration by the court except as noted:

**The Parties may file motions *in limine* consistent with the Local Rules and the Court's scheduling order.**

1

**Plaintiffs intend to file a Motion for Leave to file a Summary Judgment motion as to liability focused on the unlawfulness of the Second and Third policies at issue in this case. Plaintiff intends to file this motion in light of the holdings of the Eleventh Circuit in this matter and in order to expedite the trial of this case. Defendants consent to the filing of a Summary Judgment motion on these issues so long as Defendants have leave to file summary judgment motions, the scope of which is yet to be determined. The Parties will file a joint request and proposed Summary Judgment motions within 30 (thirty) days of submission of this Pretrial Order.**

2.

All discovery has been completed, unless otherwise noted, and the court will not consider any further motions to compel discovery. (Refer to LR 37.1B). Provided there is no resulting delay in readiness for trial, the parties shall, however, be permitted to take the depositions of any persons for the preservation of evidence and for use at trial.

**All discovery is complete, but the Parties reserve the right to take depositions before trial for the preservation of evidence and use at trial. The Parties further reserve the right to send requests pursuant to the Georgia Open Records Act.**

3.

Unless otherwise noted, the names of the parties as shown in the caption to this Order and the capacity in which they appear are correct and complete, and there is no question by any party as to the misjoinder or non-joinder of any parties.

**The names of the parties are accurate and complete.**

4.

Unless otherwise noted, there is no question as to the jurisdiction of the court; jurisdiction is based upon the following code sections. (When there are multiple claims, list each claim and its jurisdictional basis separately.)

**This Court has jurisdiction over Plaintiff's claims under 28 U.S.C. §§ 1331 and 1343.**

**Defendant asserts that the Eleventh Amendment may act as a jurisdictional bar.**

5.

The following individually-named attorneys are hereby designated as lead counsel for the parties:

Plaintiff:          **Zack Greenamyre**
                    **Gerald Weber**


Defendants:     **Terry E. Williams**
                **terry@wmwlaw.com**

**Jason Waymire**
**jason@wmwlaw.com**
**4330 South Lee Street**
**Buford, Georgia 30518**
**678-541-0790**

Other Parties: **Not applicable.**

6.

Normally, the plaintiff is entitled to open and close arguments to the jury. (Refer to LR 39.3(B)(2)(b)). State below the reasons, if any, why the plaintiff should not be permitted to open arguments to the jury.

**None.**

7.

The captioned case shall be tried **(  X  ) to a jury** or (_____) to the court without a jury, or (_____) the right to trial by jury is disputed.

8.

State whether the parties request that the trial to a jury be bifurcated, i.e. that the same jury consider separately issues such as liability and damages. State briefly the reasons why trial should or should not be bifurcated.

**The parties do not request bifurcation.**

9.

Attached hereto as Attachment "A" and made a part of this order by reference are the questions which the parties request that the court propound to the jurors concerning their legal qualifications to serve.

**Pursuant to this Court's order setting trial, Doc. 114, the parties will submit proposed qualification questions by August 26, 2025.**

10.

Attached hereto as Attachment "B-1" are the general questions which Plaintiff wishes to be propounded to the jurors on *voir dire* examination. Attached hereto as Attachment "B-2" are the general questions which Defendant wishes to be propounded to the jurors on *voir dire* examination.

The court shall question the prospective jurors as to their address and occupation and as to the occupation of a spouse, if any. Counsel may be permitted to ask follow-up questions on these matters. It shall not, therefore, be necessary for counsel to submit questions regarding these matters. The determination of whether the judge or counsel will propound general *voir dire* questions is a matter of courtroom policy which shall be established by each judge.

**Pursuant to this Court's order setting trial, Doc. 114, the parties will submit proposed voir dire questions by August 26, 2025.**

11.

**The parties will submit any objections to proposed voir dire following the questions' submissions.**

12.

All civil cases to be tried wholly or in part by jury shall be tried before a jury consisting of not less than six (6) members, unless the parties stipulate otherwise. The parties must state in the space provided below the basis for any requests for additional strikes. Unless otherwise directed herein, each side as a group will be allowed the number of peremptory challenges as provided by 28 U.S.C. § 1870. See Fed.R.Civ.P. 47(b).

**The parties do not request additional strikes.**

13.

State whether there is any pending related litigation. Describe briefly, including style and civil action number.

**Defendants' petition for certiorari is pending in the United States Supreme Court.  If the Supreme Court grants certiorari or issues a summary disposition, then circumstances may favor delay or cancellation of trial.**

14.

Attached hereto as Attachment "C" is plaintiff's outline of the case which includes a succinct factual summary of plaintiff's cause of action and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law creating a specific legal duty relied upon by plaintiff shall be listed under a separate heading. In negligence cases, each and every act of negligence relied upon shall be separately listed. For each item of damage claimed, plaintiff shall separately provide the following information:

(a)    a brief description of the item claimed, for example, pain and suffering;

(b)    the dollar amount claimed; and

(c)    a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable.  **See Attachment C.**

15.

Attached hereto as Attachment "D" is the Defendant's outline of the case which includes a succinct factual summary of all general, special, and affirmative defenses relied upon and which shall be neither argumentative nor recite evidence. All relevant rules, regulations, statutes, ordinances, and illustrative case law relied

upon as creating a defense shall be listed under a separate heading. **See Attachment D.**

For any counterclaim, the defendant shall separately provide the following information for each item of damage claimed:

(a) a brief description of the item claimed;

(b) the dollar amount claimed; and

(c) a citation to the law, rule, regulation, or any decision authorizing a recovery for that particular item of damage. Items of damage not identified in this manner shall not be recoverable. **There are no counterclaims.**

16.

Attached hereto as Attachment "E" are the facts stipulated by the parties. No further evidence will be required as to the facts contained in the stipulation and the stipulation may be read into evidence at the beginning of the trial or at such other time as is appropriate in the trial of the case. It is the duty of counsel to cooperate fully with each other to identify all undisputed facts. A refusal to do so may result in the imposition of sanctions upon the non-cooperating counsel. **The parties agree to confer further with respect to the submission of stipulated facts. See Attachment E.**

17.

The legal issues to be tried are as follows:

**<u>Plaintiff</u>**:

1. **Whether Plaintiff was excluded from the volunteer ministry program because of his views on baptism and/or pretextual grounds or whether the exclusion was based on bona fide security concerns.**

2. **In the event the jury finds for Plaintiff on the retaliation claim, the appropriate measure of nominal, presumed, compensatory and punitive damages.**

3. **In the event the jury finds for Plaintiff on the retaliation claim, whether an injunction should issue to permit Plaintiff to resume his volunteer ministry at the jail. (This is a legal issue for the Court, rather than for a jury).**

4. **The appropriate measure of nominal and actual damages to compensate Plaintiff for having been subjected to facially invalid policies affording Defendants' unbridled discretion as found by the Eleventh Circuit.**

5. **Whether Plaintiff is a prevailing party entitling him to attorney fees under 42 U.S.C. § 1988. (This is a legal issue for the Court, rather than for a jury).**

**BY DEFENDANTS:**

(2.1) Whether either Defendant can be liable under the First Amendment for denial of Jarrard's 2020 or 2021 applications to the jail volunteer ministry program, due to alleged viewpoint discrimination against Jarrard's view of baptism;

(2.2) Whether Jarrard's 2020 or 2021 applications were submitted legitimately and in good faith;

(2.3) Whether denial of Jarrard's 2020 or 2021 applications was based, in whole or in part, on a reason that did not involve viewpoint discrimination against Jarrard's view of baptism;

(2.4) Whether the Second Policy or the Third Policy was the moving force behind denial of Jarrard's 2020 or 2021 applications due to alleged viewpoint discrimination against Jarrard's view of baptism;

(2.5) Whether either Defendant can be liable for viewpoint discrimination against Jarrard's view of baptism due to execution of the Second Policy or the Third Policy;

(2.6) Proximate causation between either Defendant's conduct and Plaintiff's claimed constitutional harm and alleged damages;

(2.7) Whether each Defendant is entitled to qualified immunity as to the federal

claims by Plaintiff. Defendants note that the ultimate qualified immunity determination is a matter of law for resolution solely by the Court, but guided by fact findings by the jury.

(2.8)   Whether the Plaintiff sustained any damages from denial of the 2020 or 2021 applications due to alleged viewpoint discrimination against Jarrard's view of baptism;

(2.9)   Whether the Plaintiff should be awarded compensatory damages, if any, and the amount thereof;

(2.10)  Issues relating to Defendant's additional defenses, as stated in Attachment D.

18.

Attached hereto as Attachment "F-1" for the plaintiff, Attachment "F-2" for the Defendants, and Attachment "F-3", etc. for all other parties is a list of all the witnesses and their addresses for each party. The list must designate the witnesses whom the party will have present at trial and those witnesses whom the party may have present at trial. Expert (any witness who might express an opinion under Rule 702), impeachment and rebuttal witnesses whose use as a witness can be reasonably anticipated must be included. Each party shall also attach to the list a reasonable specific summary of the expected testimony of each expert witness. All of the other

parties may rely upon a representation by a designated party that a witness will be present unless notice to the contrary is given ten (10) days prior to trial to allow the other party(s) to subpoena the witness or to obtain the witness' testimony by other means. Witnesses who are not included on the witness list (including expert, impeachment and rebuttal witnesses whose use should have been reasonably anticipated) will not be permitted to testify, unless expressly authorized by court order based upon a showing that the failure to comply was justified.   **See Attachments F-1 and F-2.**

19.

Attached hereto as Attachment "G-1" for the plaintiff, "G-2" for the defendants, and "G3", etc. for all other parties are the typed lists of all documentary and physical evidence that will be tendered at trial. Learned treatises which are expected to be used at trial shall not be admitted as exhibits. Counsel are required, however, to identify all such treatises under a separate heading on the party's exhibit list. Each party's exhibits shall be numbered serially, beginning with 1, and without the inclusion of any alphabetical or numerical subparts. Adequate space must be left on the left margin of each party's exhibit list for court stamping purposes. A courtesy copy of each party's list must be submitted for use by the judge. Prior to trial, counsel shall mark the exhibits as numbered on the attached lists by affixing numbered

yellow stickers to plaintiff's exhibits, numbered blue stickers to Defendant's exhibits, and numbered white stickers to joint exhibits. When there are multiple plaintiffs or defendants, the surname of the particular plaintiff or defendant shall be shown above the number on the stickers for that party's exhibits. Specific objections to another party's exhibits must be typed on a separate page and must be attached to the exhibit list of the party against whom the objections are raised. Objections as to authenticity, privilege, competency, and, to the extent possible, relevancy of the exhibits shall be included. Any listed document to which an objection is not raised shall be deemed to have been stipulated as to authenticity by the parties and shall be admitted at trial without further proof of authenticity. Unless otherwise noted, copies rather than originals of documentary evidence may be used at trial. Documentary or physical exhibits may not be submitted by counsel after filing of the pretrial order, except upon consent of all the parties or permission of the court. Exhibits so admitted must be numbered, inspected by counsel, and marked with stickers prior to trial. Counsel shall familiarize themselves with all exhibits (and the numbering thereof) prior to trial. Counsel will not be afforded time during trial to examine exhibits that are or should have been listed.

**Any objections as to the authenticity, privilege, competency, and, to the extent possible, relevancy of an opposing party's exhibits will be filed by August**

**26, 2025.**

20.

The following designated portions of the testimony of the persons listed below may be introduced by deposition:

**The Parties may introduce for cross examination or impeachment purposes, portions of the depositions of those persons who have been deposed during the course of this litigation including the Plaintiff and those persons listed as Witnesses on attachments "F-1" or "F-2." The Parties shall be permitted to use any deposition of any witness at trial for any purpose allowed under the Federal Rules of Civil Procedure, the Federal Rules of Evidence, and Local Rules, including, but not limited to any witness who is or may be unavailable. The Parties shall also be permitted to designate additional deposition testimony based on the final claim(s) asserted in the Pretrial Order and the evidence submitted at trial.**

**No such witnesses are identified at this time, but the parties reserve the right to use at trial any depositions taken in this case in accordance with Fed. R. Civ. P. 32 and Fed. R. Evid. 803, 804, 805, 806 or 807.**

**The parties shall submit any deposition designations and objections by August 19, 2025, consistent with the Court's order setting trial, Doc. 114.**

Any objections to the depositions of the foregoing persons or to any questions or answers in the depositions shall be filed in writing no later than the day the case is first scheduled for trial. Objections not perfected in this manner will be deemed waived or abandoned. All depositions shall be reviewed by counsel and all extraneous and unnecessary matter, including non-essential colloquy of counsel, shall be deleted. Depositions, whether preserved by stenographic means or videotape, shall not go out with the jury.

21.

Attached hereto as Attachments "H-1" for the plaintiff, "H-2" for the defendants, and "H-3", etc. for other parties, are any trial briefs which counsel may wish to file containing citations to legal authority concerning evidentiary questions and any other legal issues which counsel anticipate will arise during the trial of the case. Limitations, if any, regarding the format and length of trial briefs is a matter of individual practice which shall be established by each judge.

**Defendants' brief concerning procedural considerations related to the qualified immunity defense is attached.**

**Plaintiff may file briefing, if any, before trial.**

22.

In the event this is a case designated for trial to the court with a jury, requests

for charge must be submitted no later than 9:30 a.m. on the date on which the case is calendared (or specially set) for trial. Requests which are not timely filed and which are not otherwise in compliance with LR 51.1, will not be considered. In addition, each party should attach to the requests to charge a short (not more than one (1) page) statement of that party's contentions, covering both claims and defenses, which the court may use in its charge to the jury. Counsel are directed to refer to the latest edition of the Eleventh Circuit District Judges Association's Pattern Jury Instructions and Devitt and Blackmar's Federal Jury Practice and Instructions in preparing the requests to charge. For those issues not covered by the Pattern Instructions or Devitt and Blackmar, counsel are directed to extract the applicable legal principle (with minimum verbiage) from each cited authority.

23.

If counsel desire for the case to be submitted to the jury in a manner other than upon a general verdict, the form of submission agreed to by all counsel shall be shown in Attachment "I" to this Pretrial Order. If counsel cannot agree on a special form of submission, parties will propose their separate forms for the consideration of the court.

**Plaintiff will submit his verdict form(s) by October 3, 2025, consistent with the Court's order setting trial, Doc. 114.**

**Please see Defendant's Attachment "I-2," which includes Defendants' current proposed verdict form, which may be amended as appropriate by the October 3, 2025 deadline.    Defendants also request submission of special interrogatories to resolve fact questions that matter to their qualified immunity defenses.**

24.

Unless otherwise authorized by the court, arguments in all jury cases shall be limited to one-half hour for each side. Should any party desire any additional time for argument, the request should be noted (and explained) herein.

**Plaintiff requests up to 60 minutes for closing argument, for each side. Defendants request to have time equal to the Plaintiff.**

25.

If the case is designated for trial to the court without a jury, counsel are directed to submit proposed finding of fact and conclusions of law not later than the opening of trial. **NOT APPLICABLE.**

26.

Pursuant to LR 16.3, lead counsel and persons possessing settlement authority to bind the parties met February 13 and March 26, 2025, with the facilitation of the Honorable Judge Walter E. Johnson, to discuss in good faith the possibility of

settlement of this case. Counsel for Plaintiff sent a follow up proposal April 22, with a requested response by May 5, 2025, to which there has been no response. The court ( ) has or ( **X** ) has not discussed settlement of this case with counsel. It appears at this time that there is:

(   ) A good possibility of settlement.

(   ) Some possibility of settlement.

( **X** ) Little possibility of settlement.

(   ) No possibility of settlement.

## 27.

Unless otherwise noted, the court will not consider this case for a special setting, and it will be scheduled by the clerk in accordance with the normal practice of the court. **The Court has specially set the trial.**

## 28.

The plaintiff estimates that it will require 1-2 days to present his evidence. The defendants estimates that it will require 2 days to present their evidence. It is estimated that the total trial time is 3-4 days.

## 29.

IT IS HEREBY ORDERED that the above constitutes the pretrial order for the above captioned case ( ) submitted by stipulation of the parties or ( ) approved

by the court after conference with the parties.

IT IS FURTHER ORDERED that the foregoing, including the attachments thereto, constitutes the pretrial order in the above case and that it supersedes the pleadings which are hereby amended to conform hereto and that this pretrial order shall not be amended except by Order of the court to prevent manifest injustice. Any attempt to reserve a right to amend or add to any part of the pretrial order after the pretrial order has been filed shall be invalid and of no effect and shall not be binding upon any party or the court, unless specifically authorized in writing by the court.

IT IS SO ORDERED this _____ day of _____, 2025.

_____
MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE

Each of the undersigned counsel for the parties hereby consents to entry of the foregoing pretrial order, which has been prepared in substantial accordance with the form pretrial order adopted by this court, as tailored to this case.

| *Counsel for Plaintiff* | *Counsel for Defendants* |
|---|---|
| **Zack Greenamyre** | /s/ Jason Waymire |
| Georgia Bar No. 293002 | Terry E. Williams |
| | Georgia Bar No. 764330 |

Mitchell Shapiro Greenamyre & Funt LLP
881 Piedmont Ave NE
Atlanta, GA 30309
404.812.4747
zack@mitchellshapiro.com

**Gerald Weber**
Georgia Bar No. 744878
Law Offices of Gerry Weber, LLC
P.O. Box 5391
Atlanta, GA 31107
(404) 522-0507

John A. Meiser
Meredith Holland Kessler
*Admitted pro hac vice*
Notre Dame Law School
Religious Liberty Clinic
1338 Biolchini Hall
Notre Dame, IN 46556
(574) 631-3880

Jason Waymire
Georgia Bar No. 764330
Williams & Waymire, LLC

## ATTACHMENT "A-2"

**Defendants understand the Court has specific qualification questions. The jurors should be qualified as to the following persons:**

1.    Stephen Jarrard

2.    Each of Plaintiff's attorneys

3.    Johnny Moats

4.    Al Sharp

**ATTACHMENT B-1**

**Pursuant to this Court's order setting trial, Doc. 114, Plaintiff will submit proposed voir dire questions by August 26, 2025.**

**ATTACHMENT "B-2"**

**DEFENDANTS' PROPOSED VOIR DIRE QUESTIONS**

Defendants understand the Court will ask standard Qualifying Questions and Background Jury Questions, adjusted to the Rome Division, so those are not duplicated here.

1.   In addition to the Court's inquiry as to each potential juror's address and occupation, the following information is also desired of each potential juror and that juror's <u>spouse</u> and <u>adult child(ren)</u> (if applicable): employer's name; number of years in occupation, and educational background.

2.   If you know or have information about either the Plaintiff or Defendant, the parties in this case:

   - How do you know that party?

   - What information do you have about that party?

   - Do you have any feelings or opinions about the Plaintiff Stephen Jarrard that would cause you to be biased in his favor?

3.   Have any of you ever been involved in faith-based witnessing or evangelism to strangers?

4.   Have any of you donated money or otherwise supported an organization or person involved in faith-based witnessing or evangelism to strangers?

5.    Have any of you, or anyone you know, ever been involved in faith-based

witnessing or evangelism at a jail or prison?  If so:

- What jail or prison?

- Over what time frame?

- What was your role?

6.    Have any of you, or a friend or family member, ever been affiliated with or

participated in a particular religious group called the "Church of Christ"?

7.    Have any of you ever donated money or anything else of value to a "Church

of Christ" group?

8.    Does anyone believe that full immersion baptism is an absolute requirement

for salvation in the Christian faith, such that without it a person is not saved?

9.    Do any of you know, however slightly, anyone who works for or has ever

worked for Polk County law enforcement?

10.    Have any of you ever been stopped, detained, investigated or arrested by any

member of Polk County law enforcement?

11.    Have you or any of your relatives ever been employed by a sheriff's

department, police department, jail or prison facility, or other law enforcement

agency?  If so:

- Have you or a family member made a complaint or had a dispute with the

administrator(s) of a law enforcement agency?

- Have you or a family member been involved in decisions about a person engaging in evangelism or providing faith-based services to incarcerated people?

12.    Have any of you ever served in the military? If so:

- What branch and role?

- Over what time frame?

13.    Aside from military service, have any of you ever been employed by a governmental department or agency, whether federal, state or local?

- What agency or entity?

- What was your role?

14.    In the event that you are or have ever been a resident of Polk County, have you ever taken a position, through petition, complaint or otherwise, on whether the practices or conduct of a Polk County law enforcement agency should be changed or retained?

15.    Have any of you, your family members or close friends had an experience with a law enforcement officer that might affect your ability to be a fair and impartial juror in this case?

16.    Without saying what the charge may have been for, have any of you ever been

arrested by any police officer?  If so, do you believe that the occurrence would affect your ability to be fair and impartial in this case?

17.    Have any of you ever spent time in jail? If so, do you believe that would affect your ability to be fair and impartial in this case?

18.    Have any of you or your family members had an experience with a law enforcement officer in which you felt that the officer acted unfairly or was abusive in some manner?

19.    Do any of your activities in your work or your social activities cause you to have regular contact with any law enforcement officers or agencies? If so, please explain.

20.    Have any of you heard anything about events or incidents involving law enforcement officers that would cause you to favor the Plaintiff in this case?

21.    Do any of you disagree with the statement that law enforcement officers should be given room for error when making policy decisions rather than facing personal liability for mistakes they may make?

22.    For any religious, social or professional organization with which you are affiliated:

- Which group do you belong to?

- How frequently do you attend meetings or functions of the group or

organization you named?

23. Have any of you ever filed a lawsuit or made a legal claim for alleged violation of your civil rights?

24. Have any of you ever filed a lawsuit or made a claim against someone for injuries or damages? If so, what type of claim was involved, such as vehicle crash, slip and fall, etc.?

25. Have any of you filed a claim or grievance against an employer for alleged discrimination?

26. The Plaintiff is allowed to present evidence first in this case. Because of that, do any of you believe you will not be able to keep an open mind and suspend making judgment in this case until you hear the Defendants' evidence?

27. Is there any reason, whether I have touched upon it or not, that would make it difficult for you to be a fair and impartial juror in this case?  If so, please describe.

**ATTACHMENT C**

**(PLAINTIFF'S OUTLINE OF THE CASE)**

Succinct factual and procedural summary

This case is about (1) the retaliatory exclusion of Stephen Jarrard from a volunteer ministry program in Polk County Jail based on county officials' disagreement with his views on baptism; and (2) unconstitutional jail policies that afforded officials unbridled discretion to limit volunteer ministries. The Eleventh Circuit resolved the second issue in Jarrard's favor, holding that the policies violated the Constitution. The Circuit also confirmed Jarrard's legal theory on the first issue, leaving only a narrow factual dispute to be decided. The evidence in the record strongly supports Jarrard's view of those facts.

Jarrard has served as a volunteer minister at jail facilities in Georgia for more than a decade. He believes that full-immersion baptism is necessary for salvation—a belief he shares with the prisoners to whom he ministers. Jarrard previously ministered at Polk County Jail, where he performed baptisms on two prior occasions without incident. He has also performed incarcerated persons' baptisms at other facilities without incident.

Defendants County Sheriff Johnny Moats and former Chief Jailer Al Sharp are (or during the relevant time were) responsible for setting and enforcing jail policies regarding volunteer religious ministers. They initially banned Jarrard from the jail after receiving complaints from other ministers about his teachings on baptism. After officials issued a new policy regarding volunteer ministers, Jarrard reapplied. Defendants denied his application and indicated that he would not be readmitted to the program unless he stopped expressing his views on baptism within the jail. Defendants thereafter rewrote the policies governing volunteer ministers several times; each time, Jarrard has reapplied, and each time Defendants have denied access to the jail and several versions of their policies prevented baptisms.

**Legal Authority**

First Amendment Retaliation

To win his First Amendment retaliation claim, Jarrard will need to show that "(1) [his] speech was constitutionally protected; (2) [he] suffered adverse conduct that would likely deter a person of ordinary firmness from engaging in such speech; and (3) there was a causal relationship between the adverse conduct and the protected speech." *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1315–16 (11th Cir. 2024) (citation omitted). The Eleventh Circuit held that Jarrard's speech was constitutionally protected, definitively resolving the first issue in Jarrard's favor. *Id.* at 1316. Likewise, on the second issue, the district court previously found that denial of "the 'opportunity to serve as a volunteer'" can sustain the claim. Doc. 34 at 39.

Thus, this claim will ultimately turn on one factual question: Was Jarrard excluded from the program because of what he said about baptism? That is, "absent this retaliatory motive," would he have been excluded? *Nieves v. Bartlett*, 139 S. Ct. 1715, 1722 (2019). Once Jarrard provides evidence of that retaliatory motive, Defendants must prove that they "would have made the same decision even if" Jarrard had not shared his views on baptism. *Warren v. DeSantis*, 90 F.4th 1115, 1127 (11th Cir. 2024).

Defendants must show that they would have excluded Jarrard from the ministry program, even if he did not express disfavored views on baptism. Defendants argue that Jarrard was excluded because of disruptive behavior, not his beliefs. But, aside from conclusory, post hoc statements, Defendants have no evidence to support this theory. The district court previously observed that "the only contemporaneous evidence [of motive] . . . focuses on theology not safety and security" and a jury could "easily find" that these "after-the-fact" justifications are pretext. Doc. 75 at 12. Indeed, even the asserted concerns about disruption turn on the content of Jarrard's baptismal beliefs and their own testimony contradicts their assertions about disruption. *See* Doc. 34 at 42.

The Eleventh Circuit further held that Jarrard has live claims for both injunctive relief and monetary damages under his retaliation claim—and that neither Eleventh Amendment immunity nor qualified immunity would shield Defendants from damages or an injunction if Jarrard prevails on this claim. *See Jarrard*, 115 F.4th at 1315 n.8; *id.* at 1315 n.10; *id.* at 1325 & n.19.

Unbridled Discretion

Following Plaintiff's appeal, the Circuit held that the challenged policies violated the First Amendment's unbridled discretion doctrine. *Jarrard v. Sheriff of Polk Cnty.*, 115 F.4th 1306, 1323 (11th Cir. 2024). And, because "the Second and Third Policies . . . violated Jarrard's clearly established First Amendment rights," the Circuit held that qualified immunity did not "shield [Defendants] from damages liability" on this claim. *Id.* at 1325–26.

Damages

Under 42 U.S.C. § 1983, Plaintiff can recover damages proximately caused by Defendant's unconstitutional actions, following the common law. *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306 (1986) ("[W]hen § 1983 plaintiffs seek damages for violations of constitutional rights, the level of damages is ordinarily determined according to principles derived from the common law of torts.").

Plaintiff seeks compensatory damages. These kinds of damages fall within the ambit of Pattern Charge 5.13. Nominal and presumed damages are also appropriate. Attorney fees are also part of Plaintiff's damages.

The Plaintiff is entitled to recover general damages for mental emotional suffering, inconvenience, and diminished capacity to labor. These amounts are to be determined in the enlightened conscience of the jury, and Plaintiff cannot presently state with certainty the amounts he will request from the jury for this element of damages. Plaintiff is entitled to recover these such damages based on the following authorities: 42 U.S.C. § 1983, *Carey v. Piphus*, 435 U.S. 247 (1978); *Olmstead v Taco Bell*, 141 F.3d 1457 (11th Cir. 1998); *Walters v. City of Atlanta*, 803 F.2d 1135, 1146 (11th Cir. 1986); *Stallworth v. Schuler*, 777 F.2d 1431, 1435 (11th Cir.1985); *Griffin v. City of Opa Locka*, 261 F.3d 1295 (11th Cir. 2001) (affirming denial of remittitur from $500,000 awarded for mental distress for sexual harassment); *Alexander v. Fulton County*, 207 F.3d 1303, 1337-38 (11th Cir. 2000); *Lambert v. Fulton County*, Ga., 253 F.3d 588, 597B98 (11th Cir. 2001); *Bogle v McClure*, 332 F.3d 1347 (11th Cir. 2003); *Weaver v. Casa Gallardo*, 922 F.2d 1515 (11th Cir. 1991); *Tucker v. Housing Authority*, 229 Fed.App'x. 820 (11th Cir. 2007).

<u>Punitive damages</u>

Under § 1983, punitive damages can be against an individual defendant in his individual capacity. *Int'l, USA v. Battle*, 559 F.3d 1170, 1177–78 & n.3 (11th Cir. 2009); *Davis v. Locke*, 936 F.2d 1208, 1214 (11th Cir. 1991). The purpose of punitive damages is to deter others. To award punitive damages, the jury must find that the defendant's conduct was "motivated by evil motive or intent." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiff is not seeking a specific amount in punitive damages.

<u>Attorney fees</u>

If Plaintiff is a prevailing party at trial, he intends to seek attorneys' fees under 42 U.S.C. § 1988.  The Eleventh Circuit has already made findings that signify Plaintiff is at least entitled to nominal damages for the unbridled discretion of the volunteer ministry policy.  Thus, notwithstanding the outcome on the retaliation claim, Plaintiff expects to seek attorney fees at least with respect to the unbridled discretion claim.

<u>Response to Defendants' outline of the case</u>

Plaintiff objects to any efforts to relitigate issues resolved by the Eleventh Circuit. Plaintiff further objects to any newly raised affirmative defense.

## ATTACHMENT "D"

## DEFENDANTS' FACTUAL OUTLINE OF THE CASE

### Background

Defendant Johnny Moats is the elected Sheriff of Polk County. At most times relevant to this case, Defendant Al Sharp was the Jail Administrator.

This case concerns the Polk County Sheriff's volunteer ministry program, under which community volunteers provide inmates with religious services. For two time periods before 2017, Plaintiff Jarrard worked as a volunteer religious minister at Polk County Jail. He was terminated from the jail volunteer program twice, once before Sheriff Moats took office and the last time in December 2016. Those terminations are pertinent background, but are not a basis for any claim in this lawsuit.

In 2020 and 2021, during the pendency of this lawsuit, Jarrard submitted two applications to serve as a volunteer religious minister at the Polk County Jail. The applications were submitted so that Jarrard could assert claims in his lawsuit. Both applications were denied, based on legitimate reasons that have nothing to do with Jarrard's religious view about baptism.

### The Jail Volunteer Ministry Program

Since before Sheriff Moats took office, the Sheriff's Office has utilized volunteers from the local community to provide religious services to inmates who wish to participate. For the time frame relevant to this case, persons who wished to serve in the volunteer program were required to submit an application to the Sheriff's Office.

The Sheriff's Office application form refers to jail ministry as "volunteer work." It notes applicants can be "terminat[ed]" once "hired." It requires applicants to sign the same confidentiality agreement as employees. It requires applicants to sign other employment-like forms, including a waiver of liability and a criminal history check. The Sheriff's Office also hired a lead jail minister, gave him staff, put him in charge of volunteer ministers, and gave him authority to terminate those ministers.

Aside from application and qualification, volunteer ministry requires completion of a safety-related course focused on how to act in a jail setting.

At Polk County and other jails, Jarrard's usual jail ministry meeting format consisted of a Bible study rather than a traditional worship service.

**Jarrard's History of Conflicts at Local Jails**

After Sheriff Moats was elected in 2012, Jarrard was re-admitted to jail ministry at the Polk County Jail. After that, the head of the Polk County Jail's ministry program expressed to the Sheriff's administration numerous concerns about Mr. Jarrard upsetting his staff and upsetting a lot of inmates in our jail. He reported that several of the other preachers in jail refused to go into the same pod as Mr. Jarrard because of his behavior.

Sheriff Moats understood that Jarrard became confrontational with other ministers in the context of jail ministry. Additionally, Defendants were concerned because Jarrard's teaching stirred up inmates by making them distraught due to his claim they had to be full-immersion baptized to avoid going to Hell. The Sheriff's Office wanted the program to help inmates rather than agitate them, and the Plaintiff

agitated inmates.

The inmate ministry program's philosophy that the volunteers were supposed to be helping inmates rather than agitating them, and Jarrard's conduct conflicted with that orientation. Sheriff Moats understood that Jarrard refused to adhere to that basic tenet of the jail ministry program.

Aside from Polk County, officials from other local jail facilities reported that Plaintiff's religious volunteer status was terminated at those facilities. Those terminations involved some type of personal conflict, often stemming from disagreement over religious doctrine.

### Jarrard's 2020 Jail Ministry Application

In March 2020, the Sheriff's Office adopted a revised jail ministry policy (termed the "Second Policy") which in relevant part states:

> Clergymen and religious advisors wishing to hold services or conduct programs in the jail must make written application to the Polk County Sheriff's Office with supporting documentation, attend a training session and then be approved by the Jail Administrator.

The application form provides various criteria for qualification to the volunteer ministry and rules governing the program.

After filing this lawsuit but having practically all claims dismissed, in April 2020 Jarrard re-applied for volunteer work in the Polk County Sheriff's Office jail ministry program so that he could continue his lawsuit. After investigating Jarrard's history at other facilities and in Polk County, Sheriff Moats and Chief Sharp learned Jarrard has a history of being at the center of disruption and religious disputes at other facilities, similar to his history in Polk County.

Specifically, Sheriff Moats called the sheriffs of Floyd County and Paulding County, both of whom indicated that Jarrard Jarrard had been ejected from jail ministries at both places due to causing disruption. Based on a call to the Cobb County Sheriff's Office, similar information emerged about Jarrard's disruptive history.

The Sheriff's Office is interested in preventing controversy in the jail, and the administration believes Jarrard has a history of promoting conflicts. The Sheriff's Office denied Jarrard's 2020 application in May 2020 in part based on Jarrard's history of conflict in the course of jail ministry in Polk County and other jail facilities.

Also, the Sheriff's Office investigation revealed Jarrard's application did not indicate the true nature of his dismissal from jail ministry at other facilities. Sheriff Moats and Chief Sharp concluded that information from an outside agency(s) conflicted with information from Jarrard's application, casting doubt on the application's truthfulness.

Specifically, Jarrard's application indicated he left the Paulding County program due to being "rotated out," whereas the Paulding County Sheriff indicated Jarrard had been banned for disruptive behavior. Lack of truthfulness in an application is a disqualifier for all Sheriff's Office positions, whether employment or the volunteer ministry program.

### Revision of the Policy and Jarrard's 2021 Application

In 2021, the Sheriff's Office adopted a new policy governing admission of volunteer clergy to minister to inmates at the Polk County Jail. This so-called "Third

Policy" provides:

> The Polk County Sheriff's Office encourages Clergy from the community to minister to the inmates. Clergymen and religious advisors wishing to hold services or conduct programs in the jail must submit a volunteer application. Members of the clergy allowed within the inner security perimeter or allowed contact visitation, must complete background checks, including the jail ministry program[.]

As under the prior policy, the application form for the volunteer ministry program details various minimum qualifications for volunteer jail ministry, including verification of basic ministry credentials, criminal history check and other items.

Once again, in order keep his lawsuit going, Jarrard submitted his last application in August 2021.

The jail ministry program was shut down for most of 2020 and into 2022, due to the Covid-19 pandemic, so the Sheriff's Office did not take action on the 2021 application until March 9, 2022.  The application was denied by a non-Defendant on the grounds of "[f]ailed background due to not compliant with 501(c)3 standards" and "[f]ailed background due to being dismissed from Floyd County Sheriff's Office and Cobb County Sheriff's Office Jail Ministry Programs." The volunteer ministry program resumed operation in April 2022.

A new policy governing the jail volunteer ministry program was adopted in March 2022. It supersedes the prior policies. There is no contention in this lawsuit that this most recent policy has some constitutional deficiency.

## DEFENDANTS DENY LIABILITY AND RELY UPON THE FOLLOWING DEFENSES:

1.  Qualified immunity protects Defendants because, at all relevant times, each was performing objectively reasonable discretionary acts as a public officer and did not violate Plaintiff's clearly established federal right of which a reasonable person would have known, under the specific circumstances of this case.

    ◦ Defendants preserve their right to challenge the legal findings by the Eleventh Circuit Court of Appeals in the interlocutory appeal, both about the proper body(s) of substantive law and the resolution of qualified immunity.

    ◦ To the extent that U.S. Supreme Court precedent or binding, pre-existing Eleventh Circuit authority conflicts with the interlocutory Eleventh Circuit opinion, Supreme Court or prior binding Eleventh Circuit authority controls;

    ◦ The Court of Appeals rulings could be (a) altered due to the different fact record at trial, or (b) overruled by the en banc Eleventh Circuit or the Supreme Court; and

    ◦ Arguments not presented to or considered by the interlocutory appeal panel could result in a correct ruling that one or both Defendants are entitled to

qualified immunity.

2.    The plaintiff must meet the burden to show that his protected viewpoint about baptism was a motivating factor behind denial of his volunteer application. Then, if the defendant can show that he would have taken the same action in the absence of the plaintiff's viewpoint about baptism, he is entitled to prevail. *Mt. Healthy City School District Board of Education v. Doyle,* 429 U.S. 274, 285-87, 97 S. Ct. 568 (1977); *Smith v. Mosley*, 532 F.3d 1270, 1278 (11th Cir. 2008). To the extent that any First Amendment "retaliation" claim is supportable, any relevant Defendant had a legitimate basis for his action, and would have taken the same action even in the absence of the Plaintiff's allegedly protected conduct.

3.    In regard to a claim based on a policy, the plaintiff must meet the burden to show that the policy in question caused a violation of his personal First Amendment right, not merely that the policy violated a court-imposed rule about how a policy should be structured. 42 U.S.C. § 1983; see *Vega v. Tekoh*, 597 U.S. 134, 150, 142 S. Ct. 2095 (2022).

4.    The doctrine of laches bars claim(s) for equitable relief.

5.    The doctrine of unclean hands bars claim(s) for equitable relief.

6.    Plaintiff has adequate remedies at law, thereby barring claim(s) for equitable

relief.

7.    The equities of the case do not preponderate in favor of equitable relief for Plaintiff, and the public interest would be disserved by the equitable relief sought in the complaint.

8.    The doctrine of mootness bars claim(s) for declaratory or equitable relief in regard to any claim based on a policy that is no longer in force. Likewise, those doctrines apply to periods of time where there was no volunteer jail religious program in operation, when nobody (including the Plaintiff) was involved in the volunteer program.

9.    The Eleventh Amendment to the United States Constitution bars any relief against any Defendant sued in an official capacity, absent an exception or waiver proven by the Plaintiff. Damages, including fees and expenses, are barred by the Eleventh Amendment.

10.    Any damages claimed by the Plaintiff should be reduced to the extent that he failed to mitigate damages.

11.    To the extent not set forth herein, Defendants raise the defenses detailed in their motion for summary judgment and supportive briefing, incorporating such defenses and doctrines here by reference.

12.    Defendants in their official capacities are not "persons" subject to suit under

42 U.S.C. § 1983.

13.    Defendants object to litigation of any claim(s) not raised in the last operative Complaint, and to litigation of any claim(s) disposed of under summary judgment order(s), regardless whether any such claim(s) are stated by the Plaintiff in the Pretrial Order entered by the Court, and Defendants do not consent (and specifically object to) litigate any such claim(s). (Defendants have no control over Plaintiff's portions of the Pretrial Order, and that lack of control shall not be construed as consent to litigate claims objected to here.)

**RELEVANT RULES, REGULATIONS, STATUES, ORDINANCES AND ILLUSTRATIVE CASE LAW RELIED UPON FOR DEFENSES**

42 U.S.C. § 1983

First Amendment to United States Constitution

**ELEMENTS FOR FEDERAL VIEWPOINT DISCRIMINATION CLAIM**

*Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1886 (2018)

*Perry Educ. Ass'n v. Perry Loc. Educators' Ass'n*, 460 U.S. 37, 52, 103 S. Ct. 948, 959 (1983)

**STANDARDS FOR MIXED MOTIVE CASES**

*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977)

*Castle v. Appalachian Tech. Coll.*, 631 F.3d 1194, 1197 (11th Cir. 2011)

**REQUIREMENT OF ACTUAL CONSTITUTIONAL HARM FROM POLICY**

*Lewis v. Casey*, 518 U.S. 343, 349 (1996) (explaining that constitutionally deficient policies do not in themselves create constitutional violations, and stating "It is the role of courts to provide relief to claimants ... who have suffered, or will imminently suffer, **actual harm**… ." ).

*Baker v. City of Madison, Alabama*, 67 F.4th 1268, 1281-82 (11th Cir. 2023)

*Beshers v. Harrison*, 495 F.3d 1260, 1264 (11th Cir. 2007)

*Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005) (dismissing case where policy was held unconstitutional but search at issue did not violate the Fourth Amendment)

## RELIANCE UPON INFORMATION FROM OTHER OFFICERS

Officers can rely upon information from other officers. See, *e.g. United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 682 (1985) ("a flyer or bulletin ... issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense" may provide a sufficient basis for a seizure by another police officer who is without personal knowledge of facts); Terrell v. Smith, 668 F.3d 1244, 1252 (11th Cir. 2012) ("the collective knowledge of the investigating officers [are] imputed to each participating officer."); *Grider v. City of Auburn, Ala.*, 618 F.3d 1240, 1257 (11th Cir.2010) ("Probable cause may exist based on the collective knowledge of law enforcement officials derived from reasonably trustworthy information."); *Williams v. Miami-Dade Police Dept.*, 297 Fed.Appx. 941, 946 (11th Cir. 2008) (officers were entitled to rely upon information from fellow officer, even if such information was false); *U.S. v. Holloway*, 290 F.3d 1331, 1338 (11th Cir.2002); *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir.1992); *United States v. Roper,* 702 F.2d 984, 989 (11th Cir.1983).

Officers can also rely upon advice or direction from other officers. *Brent v. Ashley*, 247 F.3d 1294, 1306 (11th Cir. 2001); *United States v. Goddard*, 312 F.3d 1360, 1363-64 (11th Cir. 2002); *United States v. Astling*, 733 F.2d 1446, 1460 (11th

Cir.1984); *Hartsfield v. Lemacks*, 50 F.3d 950, 956 (11th Cir.1995) (granting qualified immunity to officers who followed lead of first officer, who led them to search wrong house in violation of Fourth Amendment); *Bilida v. McCleod*, 211 F.3d 166, 174 -175 (1st Cir. 2000); *Valance v. Wisel*, 110 F.3d 1269, 1280 (7th Cir.1997); *United States v. Allison*, 953 F.2d 1346, 1350 (11th Cir.1992); *United States v. Wilson*, 894 F.2d 1245, 1254 (11th Cir.1990); *Collins v. Nagle*, 892 F.2d 489, 495 (6th Cir.1989).

## QUALIFIED IMMUNITY

*Wood v. Moss*, 572 U.S. 744, 748 (2014)

*Plumhoff v. Rickard*, 572 U.S. 765, 134 S. Ct. 2012, 2023 (2014)

*Reichle v. Howards*, 566 U.S. 658, 132 S. Ct. 2088 (2012)

*Brannon v. Finkelstein*, 754 F.3d 1269 (11th Cir. 2014)

*Foy v. Holston*, 94 F.3d 1528 (11th Cir. 1996)

*Stanley v. City of Dalton*, 219 F.3d 1280 (11th Cir. 2000)

*Sasser v. Bd. of Regents*, No. 21-14433, 2023 U.S. App. LEXIS 5745 (11th Cir. 2023)

*Taylor v. Palmer*, No. 21-14070, 2023 U.S. App. LEXIS 17163 (11th Cir. 2023)

*Echols v. Lawton*, 913 F.3d 1313, 1325 (11th Cir. 2019)

*Gaines v. Wardynski*, 871 F.3d 1203, 1210 (11th Cir. 2017)

*Maggio v. Sipple*, 211 F.3d 1346, 1354 (11th Cir. 2000)

See also Defendant's Attachment "H-1", *Trial Brief regarding immunity procedures*

## **DAMAGES**

*Farrar v. Hobby*, 506 U.S. 103, 115, 113 S. Ct. 566, 575 (1992)

*Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999) (independent acts by autonomous actors breaks the chain of causation between a police officer's conduct and "damages" arising after the independent act).

*Memphis Community School Dist. v. Stachura*, 477 U.S. 299, 106 S.Ct. 2537 (1986) (discussing damages, and holding that compensation is not available for "value" of abstract rights but must be based on actual damages)

*Carey v. Piphus,* 435 U.S. 247, 253, 98 S.Ct. 1042, 1047, 55 L.Ed.2d 252 (1978) (holding that damages must proximately relate to the actual injury, and that actual damages must be proven to recover more than nominal damages)

## **LITIGATION EXPENSES**

42 U.S.C. § 1988

## ATTACHMENT "E"

## FACTS STIPULATED BY THE PARTIES

1.     Defendants acted "under color of state law" at all relevant times.

Counsel for the Parties will confer regarding any other facts that can be stipulated and submit stipulations at a reasonable time before trial.

ATTACHMENT "F – 1"

**PLAINTIFF'S LIST OF WITNESSES**

<u>Plaintiff will have present:</u>

1.  Stephen Jarrard

<u>Plaintiff may have present:</u>

1.  Johnny Moats
2.  Al Sharp
3.  Dustin Strop
4.  Marcia Jarrard
5.  Tommy Rose
6.  Ollie "Mitchell" Morris
7.  Kevin Myrick
8.  Earl Wigley
9.  Tommy Polk
10. Irvin Jones
11. Susan Jones
12. Larry Garman
13. Stephen Baskin
14. Jerry Shellhouse
15. Mark Goldfeder
16. Sam Gobel
17. Willie Singleton
18. Phil Robertson
19. Chris Zachos
20. Stephen Troup
21. Bobby Hamilton
22. Carlos Stallings
23. Jose Ramirez
24. Any witness on Defendants' witness list

# ATTACHMENT "F – 2"

## DEFENDANTS' WITNESSES

DEFENDANTS WILL CALL

Johnny Moats and Al Sharp, Represented by Counsel of record;

DEFENDANTS MAY CALL

| | | | |
|---|---|---|---|
| 1 | Earl Wigley | 89 Cashtown Loop Rd, Aragon, GA 30104, (770) 684-8191 404-473-1363 | |
| 2 | Cyril Watnes | 1189 Paul Harris Rd, Dallas, GA 30157 | |
| 3 | Tommy Polk | 706-844-5645 706-777-8477 | |
| 4 | Gary Gulledge | GA Board of Corrections (478) 992-5258 | |
| 5 | Tim Burkhalter | 324 Broad St., Rome, GA 706-413-4614 | |
| 6 | Rachel Haddix | 1676 Rockmart Highway Cedartown, Georgia 30125 770-749-2937 | (party employee, please contact through counsel) |
| 7 | Record custodian for Paulding County Sheriff's Office | 190 Constitution Boulevard Dallas, GA 30132 (770) 443-3030 | |
| 8 | Record custodian for Cobb County Sheriff's Office | Operations Annex 1877 County Services Parkway, Marietta, Georgia 30008, 770.499.4728 | |
| 9 | Record custodian for Floyd County Sheriff's Office | 2526 New Calhoun Highway Northeast, Rome, Georgia 30161 | |

706 291-4111

12. Person(s) required to authenticate public or business records;

13.  Any person listed on Plaintiff's witness list.

**Plaintiff objects to testimony from Gary Gulledge, Tim Burkhalter, and Rachel Haddix, as these are persons not identified in initial disclosures or in the course of discovery. These persons were first disclosed as potential witnesses via email on April 30, 2025.**

**For the Defendants:  The referenced persons were identified in discovery and their status as witnesses was apparent under the circumstances of the disclosures.**

## ATTACHMENT G-1

*Plaintiff's Exhibit List*

By listing the documents below as exhibits, Plaintiff does not intend to indicate that these documents are necessarily admissible, in whole or in part, or that, if admissible, the exhibits do not require redactions.

1.   May 2, 2019 letter from Moats to Goldfeder

2.   First Policy, Jail Order Number 7.07

3.   Second Policy, Jail Policy 5.23

4.   Third Policy, Jail Order Number 7.07

5.   Fourth Policy, Jail Order 7.07

6.   Photograph of Plaintiff with trough on trailer

7.   January 2017 volunteer application

8.   April 2020 volunteer application

9.   August 2021 volunteer application

10.   Christian Living article

11.   Bobby Hamilton letter to Chief Sharp

12.   January 2017 letter from Jarrard to Sharp

13.   Undated letter from Jarrard (at Doc. 60-4)

14.   Standard Journal article April 26, 2017

15.     Protest flyer (at Doc. 60-6)

16.     June 25, 2018 letter from Jarrard to Moats

17.     May 6, 2020 letter from Waymire to Weber and Greenamyre

18.     April 1, 2020 letter from Reed to Greenamyre

19.     Sharp personnel file

20.     Moats personnel file

21.     Stroup personnel file

22.     October 22, 2021 incident report re: Wright

23.     February 2018 kiosk correspondence between Morris and Stroup

24.     "How Does One Get IN To Christ"

25.     Polk County Sheriff's Office, Waiver of Liability

26.     December 9, 2021 Polk County Sheriff Office subpoena response

## By Defendants:

Defendants will file any objections to authenticity, privilege, competency and, to the extent presently known, relevancy, by August 26, 2025.

**Defendants reserve the right to assert any and all objections legally appropriate *in limine* or at trial.**

## ATTACHMENT"G-2"  DEFENDANT'S EVIDENCE

By listing the following materials, Defendants do <u>not</u> stipulate to relevancy of any particular exhibit. Rather, some exhibits are listed solely because Defendants cannot specifically anticipate how the evidence might develop at trial and Defendants may need to tender evidence that they currently view as irrelevant simply to counter evidence presented by Plaintiff over objection or otherwise.

| | |
|---|---|
| 1 | Plaintiff Jarrard's volunteer application from January 2017 |
| 2 | Letter dated February 6, 2017 relating to Plaintiff Jarrard's volunteer application |
| 3 | Plaintiff Jarrard's volunteer application from April 2020 |
| 4 | Letter dated May 6, 2020 relating to Plaintiff Jarrard's volunteer application |
| 5 | Jail policy 5.23 (effective 3/12/2020) |
| 6 | Plaintiff Jarrard's volunteer application from August 2021 |
| 7 | Letter denying August 2021 volunteer application (Doc. 69-1) |
| 8 | Jail policy 7.07 (revised 8/17/2020) |
| 16 | Plaintiff letter to Sheriff Burkhalter (June 2018) |
| 17 | Volunteer application form for jail volunteer religious work, with cover letter |
| 18 | Demand letter from Mark Goldfeder from April 2019 |
| 19 | Sheriff's response to demand letter from Mr. Goldfeder (May 2, 2019) |
| 20 | Building photo (Ex. 3 to Jarrard deposition) |
| 21 | Photo of Mr. Jarrard with horse trough on trailer (Ex. 10 to Jarrard |

deposition)

22      Floyd County Sheriff's Office Procedure Sec. VIII, D-395

23      Jail policy 7.07 (revised 3/23/2022)

24      Letter from Defendants' counsel dated January 25, 2022 advising that
        jail ministry program remains shut down

25      Materials relating to Plaintiff's rejection or dismissal from the Cobb
        County jail ministry program

26      Materials relating to Plaintiff's rejection or dismissal from the Paulding
        County jail ministry program

27      Materials relating to Plaintiff's rejection or dismissal from the Floyd
        County jail ministry program

THE FOLLOWING ARE NOT EXHIBITS THAT SHOULD BE
PROVIDED TO THE JURY, BUT ARE WRITTEN MATERIALS THA
MAY BE USED DURING TRIAL

30      Transcripts of depositions taken in this case

31      Plaintiff's pleadings in this case

32      Plaintiff's Responses to Requests for Production

33      Plaintiff's Responses to Interrogatories

34      Plaintiff's Initial Disclosures

Defendants reserve the right to use any exhibit listed by Plaintiff but not
listed here, though Defendants do not stipulate to the authenticity or
admissibility of such exhibits.

## **Plaintiff's Objections to Defendant's Attachment "G-2"**

**Objections as to the authenticity, privilege, competency, and, to the extent possible, relevancy of an opposing party's exhibits will be filed by August 26, 2025. Additionally and specifically, Plaintiff objects to proposed exhibits 25-27 to the extent these exhibits were not produced in discovery.**

**ATTACHMENT H-2**

**DEFENDANTS' TRIAL BRIEF REGARDING PROCEDURAL ISSUES
SURROUNDING QUALIFIED IMMUNITY**

**I.    PROPER    RESOLUTION    OF    DEFENDANTS'    IMMUNITY
DEFENSES REQUIRES THE COURT TO SUBMIT SPECIAL
INTERROGATORIES TO THE JURY**

Defendants request the Court to submit special interrogatories to the jury to

aid in the Court's resolution of their qualified immunity defenses. Federal Rule of

Civil Procedure 49(b) provides in relevant part:

> **(b) General Verdict Accompanied by Answer to Interrogatories.** The
> court may submit to the jury, together with appropriate forms for a general
> verdict, written interrogatories upon one or more issues of fact the decision
> of which is necessary to a verdict. The court shall give such explanation or
> instruction as may be necessary to enable the jury both to make answers to
> the interrogatories and to render a general verdict, and the court shall direct
> the jury both to make written answers and to render a general verdict.

Under the summary judgment order a number of material facts are in sharp

dispute. Depending upon how the jury resolves various factual disputes, Defendants

may be entitled to qualified immunity once the jury determines the facts, and

therefore it is important that the jury make specific findings of facts relative to the

issues.

[A] defendant who does not win summary judgment on qualified immunity grounds may yet prevail on those grounds at or after trial on a motion for a judgment as a matter of law. Moreover, a district court can, when needed, use special verdicts or written interrogatories to the jury to resolve disputed facts before the judge rules on the qualified-immunity question.

*Kelly v. Curtis,* 21 F.3d 1544, 1546-47 (11th Cir.1994) (citations and internal punctuation omitted). In this case, the jury must make specific findings of fact so that the Court can determine whether Defendants are entitled to qualified immunity.

A tool used to apportion the jury and court functions relating to qualified immunity issues in cases that go to trial is special interrogatories to the jury. "Qualified immunity is a legal issue to be decided by the court, and the jury interrogatories should not even mention the term. Instead, the jury interrogatories should be restricted to the who-what-when-where-why type of historical fact issues." *Cottrell,* 85 F.3d at 1488 (internal citations omitted). **In a proper case, the use of special jury interrogatories going to the qualified immunity defense is not discretionary with the court.** As we said in *Cottrell,* "[b]ecause **a public official who is put to trial is entitled to have the true facts underlying his qualified immunity defense decided, a timely request for jury interrogatories directed toward such factual issues should be granted.**" *Id.* at 1487. In the same opinion, we explained: "**Denial of such a request would be error**, because it would deprive the defendant who is forced to trial of his right to have the factual issues underlying his defense decided by the jury." *Id.* at 1487-88; see also *Willingham v. Loughnan,* 261 F.3d 1178, 1184 n. 9 (11th Cir.2001) ("[W]hen the question of qualified immunity turns on specific questions of fact, the use of special interrogatories can be very helpful to a judge in determining the legal question of whether qualified immunity applies.") But the failure to give requested jury interrogatories may not be error, or if error may be harmless, where the jury verdict itself, viewed in the light of the jury instructions, and any interrogatories that were

answered by the jury, indicate without doubt what the answers to the refused interrogatories would have been, or make the answers to the refused interrogatories irrelevant to the qualified immunity defense.

*Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir.2002) (emphases supplied).

Defendants respectfully submit that it would be error for the Court to refuse to submit special interrogatories to the jury, since it could effectively deprive Defendants of meaningful review (by way of a post-verdict motion for judgment as a matter of law or appeal) of their qualified immunity defense. *Cf. Priester v. City of Riviera Beach, Fla.*, 208 F.3d 919, 926 n. 3 (11th Cir. 2000) ("Here, Defendants did not request, nor did the court use, a special verdict or written interrogatories. Therefore, we must resolve all disputed factual issues for the question of qualified immunity by viewing the evidence in the light most favorable to Plaintiff.").

Accordingly, Defendants request the Court to submit their proposed special interrogatories to the jury.

## II.   A DAMAGES JUDGMENT CANNOT BE ENTERED ON A VERDICT FOR THE PLAINTIFF UNTIL THE COURT RULES ON DEFENDANTS' POST-TRIAL QUALIFIED IMMUNITY DEFENSE

Defendants respectfully submit that judgment cannot be entered until the Court adjudicates their qualified immunity defense, which is a matter of law for the Court

to decide post-verdict.[1]

The law is that qualified immunity is an affirmative defense that can be asserted at trial by a public officer.  But it is not like most other affirmative defenses.  When qualified immunity is asserted at trial, the following is true:

> [Where a conflict in evidence requires denial of a Rule 50 motion] [i]t is important to recognize … that a defendant is entitled to have any evidentiary disputes upon which the qualified immunity defense turns decided by the jury so that the court can apply the jury's factual determinations to the law and **enter a post-trial decision on the defense**. When the case goes to trial, the jury itself decides the issues of historical fact that are determinative of the qualified immunity defense, but the jury does not apply the law relating to qualified immunity to those historical facts it finds; **that is the court's duty**.

*Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir.2002) (citation omitted; emphases supplied

Based on *Johnson*, no judgment should be entered on a jury verdict until all trial matters—legal and factual—have been adjudicated.[2]  That includes the legal

---

[1]    Defendants can provide a copy of an order by Judge Land of the Middle District of Georgia, vacating a judgment on a jury verdict because it was prematurely entered prior to the Court's post-trial ruling on the defendant's qualified immunity defense.

[2]  The one notable exception is the Rule 50(b) motion, but that is a different matter than adjudication of a properly preserved, submitted but as yet non-adjudicated qualified immunity defense.

defense of qualified immunity, which remains for adjudication by the Court regardless of the jury's verdict.

Aside from *Johnson*, three reasons underlie the conclusion that judgment cannot be entered before the Court's post-trial rulings on qualified immunity.

First, final judgment cannot be entered until resolution of *all* matters at issue between the parties. See Fed. R. Civ. P. 54(b). Even after a verdict, qualified immunity remains a defense that must be ruled upon by the Court. *Johnson*, 280 F.3d at 1318. Therefore, entry of judgment before adjudication of Defendant's qualified immunity defense would be premature. That is, judgment should not be entered until the Court rules on the qualified immunity defense, based upon the law as applied to the special interrogatory answers returned by the jury.

Second, in the event of a verdict for the plaintiff, entry of judgment prematurely subjects a public officer to execution and possibly financial hardship or ruin, before the officer has the benefit of having his properly submitted qualified defense adjudicated. That result is contrary to the policies underlying qualified immunity. Moreover, premature entry of judgment for a plaintiff runs the risk of the defendant being deprived of property and subjected to hardship, even though he may in the end be entitled to judgment in his favor based on immunity.

Third, absent tolling, the time to file a notice of appeal runs 30 days from entry of judgment. After notice of appeal is filed, the trial court generally lacks jurisdiction to alter a judgment. Accordingly, entry of judgment without adjudication of the qualified immunity defense risks a party filing a notice of appeal within 30 days from judgment, in which case an appeal would proceed without the Court having ruled on Defendants' qualified immunity defenses.

That procedural scenario is inconsistent with the policy considerations grounding qualified immunity, inconsistent with the trial court's "duty" to "enter a post-trial decision on the [qualified immunity] defense," *Johnson v. Breeden*, 280 F.3d 1308, 1318 (11th Cir.2002), and it would also leave the parties and the Court of Appeals without the benefit of the trial court's post-verdict ruling on an officer's qualified immunity defense. *Cf. Stone v. Peacock*, 968 F.2d 1163, 1166 (11th Cir.1992) ("Although the parties have argued on appeal whether the defendants are entitled to qualified immunity, it is appropriate for the district court to make this determination first.").

## CONCLUSION

For the reasons discussed above, Defendants respectfully submit that they are entitled to submission of special interrogatories as necessary to adjudicate their

qualified immunity defenses, and judgment on a verdict for the Plaintiff cannot be entered until after the Court's post-trial ruling on that defense.

**ATTACHEMENT I-1**

**Plaintiff's proposed verdict form will be submitted by October 3, 2025, consistent with the Court's order setting trial, Doc. 114.**

## ATTACHEMENT I-2

## DEFENDANTS' PROPOSED VERDICT FORM.

DEFENDANTS REQUESTS THE FOLLOWING VERDICT FORM TO BE PROVIDED TO THE JURY WITH SPECIAL INTERROGATORIES UNDER FED. R. CIV. P. 49(b).  IN THE EVENT THAT THE COURT REFUSES TO GIVE SPECIAL INTERROGATORIES, DEFENDANTs REQUEST A SPECIAL VERDICT FORM SUBSTANTIALLY SIMILAR TO THE FORM BELOW, AND WHICH INCLUDES THEIR PROPOSED SPECIAL INTERROGATORIES. See FED. R. CIV. P. 49(a).    DEFENDANTS' PROPOSED SPECIAL INTERROGATORIES WILL BE PROVIDED SEPARATELY.

EACH DEFENDANT IS ENTITLED TO HIS OWN VERDICT FORM IN SUBSTANTIALLY THE FORM BELOW:

## <u>VERDICT FORM</u>

## <u>SECTION 1</u>

### Do you find from a preponderance of the evidence:

1.    Do you find that Defendant [Name] denied the Plaintiff's <u>2020</u> application for jail ministry solely because of that Defendant's disagreement with the Plaintiff's religious view about baptism, and thereby violated the Plaintiff's right under the First Amendment to the U.S. Constitution?

Answer Yes or No    _____

2.    Do you find that Defendant [Name] denied the Plaintiff's <u>2021</u> application for jail ministry solely because of that Defendant's disagreement with the Plaintiff's religious view about baptism, and thereby violated the Plaintiff's right under the First Amendment to the U.S. Constitution?

Answer Yes or No            _____

[<u>N</u>ote:        If you answered No to Questions 1 and 2, skip the next questions and go to the end of the form. If you answered Yes to either of the foregoing questions, please answer the remaining questions in this Section 1 and then go to Section 2]

3.    Do you find that a policy adopted by Defendant [Name] caused denial of the Plaintiff's 2020 application or 2021 application solely based on disagreement with the Plaintiff's religious view about baptism, and thereby the policy was the moving force behind violation of the Plaintiff's right under the First Amendment to the U.S. Constitution?

Answer Yes or No            _____

4.    Were Defendant [Name]'s actions the proximate or legal cause of damages to the Plaintiff resulting from viewpoint discrimination?

Answer Yes or No          _____

## **SECTION 2 - DAMAGES**

5.    If you answered "yes" to questions **1, 2, or 3, and to question 4** then should the Plaintiff be awarded damages to compensate for actual damages proximately caused solely by Defendant  [Name]'s wrongful conduct?

Answer Yes or No                    _____

If your answer was Yes,
in what amount?                      $_____

SO SAY WE ALL.


_____          _____
Foreperson                                DATED: